ORIGINAL

1   Henry Ruggeri, In Pro Per
    4814 Highgrove Avenue
2   Torrance, CA 90505
    Phone: (310) 801-8105
3   Email: henry@ruggeri.com

4   Camm L. Sublette, In Pro Per
    880 Apollo St Ste 302
5   El Segundo, CA 90245
    Phone Number: (310) 322-2441
6   Fax Number: (310) 322-2508
    Email: sandlaw@pacbell.net

7

```
                            FILED

                        AUG 1 2 2011

                   CLERK U.S. BANKRUPTCY COURT
                   CENTRAL DISTRICT OF CALIFORNIA
                   BY              Deputy Clerk
```

8                   UNITED STATES BANKRUPTCY COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                        SANTA ANA DIVISION

11  In re:                              Case No.: 8:07-bk-12994-TA

12                                      Chapter 11
    SOUTH COAST OIL CORPORATION,
13

14          Debtor.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                1
                            **COMPLAINT**

HENRY RUGGERI, an individual, and CAMM SUBLETTE, an individual, in the Right of and for the Benefit of SOUTH COAST OIL CORPORATION,

        Plaintiffs,

v.

E&B NATURAL RESOURCE RESOURCES MANAGEMENT CORPORATION, a California Corporation; ELYSIUM WEST LLC, a California business of unknown form; LOU ZYLSTRA, an individual; JAMES SCOTT, an individual; BOB GRAYSON, an individual; BG OPERATIONS LLC, a business of unknown form; DOUGLAS MAHAFFEY, an individual; DONALD WHITE, an individual; and DOES 1 through 50, inclusive,

        Defendants,

and

SOUTH COAST OIL CORPORATION, a California Corporation,

        Nominal Defendant.

**SHAREHOLDER DERIVATIVE COMPLAINT SEEKING DAMAGES AND INJUNCTIVE RELIEF IN ADVERSARY PROCEEDING FOR**
1) **WASTE OF CORPORATE ASSETS;**
2) **TEMPORARY, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

    Plaintiffs KEN RHODE and CAMM SUBLETTE, by and through their attorneys, derivatively on behalf of nominal defendant SOUTH COAST OIL CORPORATION hereby complain and allege as follows:

## INTRODUCTION

    1.    Plaintiffs HENRY RUGGERI and CAMM SUBLETTE ("Plaintiffs"), derivatively on behalf of nominal defendant SOUTH COAST OIL CORPORATION ("South Coast" or the "Company"), seek relief for damages sustained and to be sustained by South Coast, against South Coast and Defendant E&B NATURAL RESOURCES MANAGEMENT

1    CORPORATION ("E&B") for mismanagement and waste of corporate assets relating to an oil

2    producing facility located in Huntington Beach known as the Springfield Unit (the "Springfield

3    Unit") co-owned by E&B and Angus Petroleum Corporation ("Angus"), a wholly owned

4    subsidiary of South Coast. Among other indicia of mismanagement, 1) The Springfield Unit has

5    operated without proper permits. The California Division of Oil, Gas, and Geothermal

6    Resources ("DOGGR") has issued an order to stop pumping because of the unpermitted pumping

7    at the Springfield Unit. DOGGR's order and Defendants' failure to secure, or even apply for,

8    proper permits threatens to stop production at the Springfield Unit. 2) There was an unexplained

9    oil spill in January 2010 that is currently being investigated and could result in significant fines

10   and penalties to Angus. Angus and E&B knew or should have known of the mismanagement and

11   waste of the Springfield Unit, had the ability to stop or mitigate the waste at the facility, did

12   nothing to stop that waste, and now seeks to profit by purchasing the remaining Angus half of the

13   property at a temporary "fire sale" value caused by the waste and mismanagement of the facility.

14   Plaintiffs will suffer irreparable harm if this sale is allowed to go through. Plaintiffs seek to stop

15   E&B from profiting, at Plaintiffs' expense, from its intentional and negligent actions and

16   omissions that have allowed the waste and mismanagement that have currently drastically

17   reduced the value of the Springfield Unit. Plaintiffs seek an Order from this Court to stop the

18   sale of Angus's assets at a time when Angus's value has been temporarily depressed by E&B's

19   unlawful, unfair, and fraudulent business practices in order to allow Plaintiffs to conduct due

20   diligence, including an accounting, property inspection, in order for the Company to explore

21   alternatives to the asset sale and/or .

## PARTIES

23        2.    Plaintiff HENRY RUGGERI is an individual residing in the County of Los

24   Angeles, State of Arizona, and a shareholder of South Coast.

25        3.    Plaintiff CAM SUBLETTE is an individual residing in the County of Los

26   Angeles, State of California, and a shareholder of South Coast.

27        4.    Nominal Defendant SOUTH COAST OIL CORPORATION is a corporation duly

28   organized and existing under the laws of the State of California, with a principal place of

**COMPLAINT**

1    business in the County of Orange, State of California.

2          5.      Plaintiffs are informed and believe and thereon allege that Defendant E&B

3    NATURAL RESOURCES MANAGEMENT CORPORATION ("Defendant" and/or "E&B"), is

4    a corporation duly organized and existing under the laws of the State of California, with offices

5    and doing business in the County of Kern, State of California.

6          6.      Plaintiffs are informed and believe and thereon allege that Defendant ELYSIUM

7    WEST LLC is a business entity duly organized and existing under the laws of the State of

8    California, with offices and doing business in the County of Kern, State of California and an

9    affiliate owned and controlled by E&B.

10         7.      Defendant LOU ZYLSTRA ("ZYLSTRA") is an individual; Plaintiffs are

11    informed and believe and thereon allege that ZYLSTRA resides in the County of Orange, State

12    of California.

13         8.      Defendant JAMES SCOTT ("SCOTT") is an individual; Plaintiffs are informed

14    and believe and thereon allege that SCOTT resides in the County of Orange, State of California.

15         9.      Defendant BOB GRAYSON ("GRAYSON") is an individual; Plaintiffs are

16    informed and believe and thereon allege that GRAYSON resides in the County of Orange, State

17    of California.

18        10.      Plaintiffs are informed and believe and thereon allege that Defendant BG

19    OPERATIONS is a business of unknown form, duly organized and existing under the laws of the

20    State of California, with offices and doing business in the County of Orange, State of California.

21        11.      Defendant DOUGLAS MAHAFFEY ("MAHAFFEY") is an individual; Plaintiffs

22    are informed and believe and thereon allege that MAHAFFEY resides in the County of Orange,

23    State of California.

24        12.      Defendant DONALD WHITE ("WHITE") is an individual; Plaintiffs are

25    informed and believe and thereon allege that WHITE resides in the County of Orange, State of

26    California.

27        13.      Plaintiffs do not know the identities of Defendants sued herein as DOES 1-50.

28    Plaintiffs are unaware of their identities, and will amend this complaint when the identities of

**COMPLAINT**

1  DOES 1-50 have been ascertained.

2      14.    Plaintiffs are informed and believe and thereon allege that at all times herein

3  mentioned each of the defendants was the agent, servant, and employee of each of its remaining

4  co-defendants and was at all relevant times herein acting within the course, scope, and authority

5  of said agency, service, and employment. At all times herein below, unless otherwise specified,

6  Defendant E&B and Does 1 through 50, inclusive, will be referred to collectively as

7  "Defendants".

8                          **JURISDICTION & VENUE**

9      15.    Jurisdiction is conferred on this Court pursuant to the provisions of Section 1334

10  of Title 28 of the United States Code in that this proceeding arises in and is related to the above-

11  captioned Chapter 11 case under Title 11 and concerns property of the Debtors in that case.

12      16.    This Court has both personal and subject matter jurisdiction to hear this case

13  pursuant to Section 1334 of Title 28 of the United States Code, Section 157(b)(1) of Title 28 of

14  the United States Code.

15      17.    This Court has supplemental jurisdiction to hear all state law claims pursuant to

16  Section 1367 of Title 28 of the United States Code.

17      18.    This matter is primarily a core proceeding and therefore the Bankruptcy Court has

18  jurisdiction to enter a final order. However, in the event this case is determined to be a non-core

19  proceeding then and in that event the Plaintiff consents to the entry of a final order by the

20  Bankruptcy Judge.

21      19.    Venue lies in this District pursuant to Section 1391 of Title 28 of the United

22  States Code.

23                          **FACTUAL BACKGROUND**

24      20.    Since 1921, Plaintiff South Coast Oil Corporation has operated as an independent

25  oil company in Southern California. South Coast owns approximately 3200 leasehold interests

26  in the Huntington Beach Oil Field encompassing approximately 300 acres.

27      21.    South Coast has in excess of 300 shareholders and has invested approximately

28  $20,000,000 for the acquisition and development of oil and gas leases, drillsites, and urban well

                          **COMPLAINT**

locations.

22.    Angus Petroleum Corporation ("Angus") is a Delaware Corporation with a principal place of business in Huntington Beach, California.

23.    In 2004, South Coast Oil Corporation purchased 100% of Angus's stock. Angus is thus a wholly owned subsidiary of South Coast Oil Corporation. Angus owns a 50% undivided interest in an oil production and processing facility in Huntington Beach, California, the Springfield Unit. Angus co-owned the Springfield Unit with Hunt Petroleum, which later became XTO Offshore ("XTO").

24.    The Springfield Unit consists of two city blocks with one block holding the drill sites and oil producing wells and the other block holding the fluid processing facility including water injection pumps and gauging a pipeline connection to the refinery grid. Angus has mineral ownership rights in an estimated 3,000,000-4,000,000 barrels of recoverable oil. The Springfield Unit currently produces approximately 5,500-6,000 barrels of oil per month.

25.    On or about April 1, 2009, E&B, through its affiliate Elysium West LLC, acquired XTO's half interest in the Springfield Unit and entered into a joint venture with Blackstone Oil & Gas, Inc. ("Blackstone") in order to facilitate the operation of the Springfield Unit and explore the potential of purchasing the half interest in the site owned by Angus.

*South Coast Involuntary Bankruptcy*

26.    On September 19, 2007, three petitioning creditors, WHITE, BG Operations LLC, and Joseph Palladino, represented by attorney MAHAFFEY, filed an involuntary bankruptcy under Chapter 11 (reorganization) of the U.S. Bankruptcy Code in the United States Bankruptcy Court for the Central District of California in a case titled *In re South Coast Oil Corporation* (Case No. 8:07-bk-12994-TA).

27.    The Court should note that Angus is only included in the South Coast Bankruptcy as an asset.

28.    In or about December 2007, the U.S. Bankruptcy court appointed James Joseph as the trustee to oversee South Coast's assets, including Angus. Thereafter, Trustee Joseph "froze out" South Coast's board of directors and appointed new directors at Angus. Most significantly,

ZYLSTRA and SCOTT were placed in control of Angus, and MAHAFFEY was appointed by
Trustee Joseph as counsel for Angus. Mr. ZYLSTRA and the Angus Board of Directors on
behalf of Trustee Joseph oversaw the operation of Angus's Springfield Unit facility during the
relevant time period, including during the time in which an oil spill was discovered, which
emanated from Angus's Springfield Unit as discussed in detail below.

29.    Plaintiffs have not been allowed to review Angus's books nor have they received
an accounting for any operation at South Coast or Angus since the bankruptcy was filed three
and a half years ago. Thus, the shareholders, officers, directors, and attorneys for South Coast
and Angus, which is not in the bankruptcy, have been completely shut out.

30.    Nonetheless, it has become abundantly clear to Plaintiffs that Angus's assets are
being mismanaged, wasted, and jeopardized by the current management team at Angus,
including ZYLSTRA and SCOTT.

*The January 2010 Oil Spill*

31.    On or about January 21, 2010, an oil spill occurred and was traced back from the
Pacific Ocean to an open walled channel, then to a 96 inch circular conduit, and then to a
perpendicular lateral that intersected the closed concrete circular, which was attached to the third
and final chamber of a "clarifier" in Angus's Springfield Unit.

32.    From approximately January 27-29, 2010, the Environmental Protection Agency
("EPA"); the California Department of Fish & Game; Angus and its agents, including directors
SCOTT and ZYLSTRA, the responsible engineers at the facility, along with the operator BG
Operations and Angus attorney MAHAFFEY; and Ocean Blue Environmental Services, Inc. a
waste management company, investigated the spill.

33.    Angus and its agents, employees, officers, and directors have alleged that
unidentified individuals had "sabotaged" the Angus facility by dumping oil into a "clean out"
line. MAHAFFEY filed a bogus lawsuit accusing Blackstone and E&B of sabotage, wasting one
and a half years (and ten days in trial in Bankruptcy Court) without objection from ZYLSTRA,
SCOTT, or Trustee Joseph. The Bankruptcy Court subsequently ruled that there was no
sabotage. Therefore, those in control and possession of the property are responsible and liable

1    for the status of the property

2        34.    On or about January 30, 2010, Ocean Blue, who was hired by the EPA to remove

3    the oil and water from the clarifier, studied, photographed, and sampled the clean out line and

4    found that no oil had been put into the clean out line in the last nine days. Further, the EPA

5    issued 6 special reports regarding the spill that established that the clarifier was the integral

6    conduit of the spill. As such, there was no sabotage of the Angus Facility. Nonetheless Angus,

7    it's employees, agents, and officers continued to insist, including in sworn testimony under

8    penalty of perjury, that the spill resulted from sabotage.

9    *Threat to Angus's Permit to Pump Oil*

10       35.    The Springfield Unit is a "secondary recovery" type of facility. It pumps oil

11   using a water injection method in which water is pumped into the oil field at high pressure,

12   pushing the oil to the surface where it, along with some of the water is collected and separated

13   from the injected water. The recovered water is then recirculated back into the water injection

14   system.

15       36.    Angus has been specifically permitted to operate this type of facility by DOGGR.

16   The DOGGR permit is vital to Angus's continued production because alternative pumping

17   methods would be much more expensive and less effective.

18       37.    DOGGR issued Order No. 1003 withdrawing Angus's permit to operate its water

19   injection pumps.

20       38.    Rather than address DOGGR's concerns and ensure continued permitting, Angus,

21   under the leadership of ZYLSTRA, SCOTT, Trustee Joseph, and under E&B's watch as half

22   owner, sued DOGGR claiming that Angus cannot be regulated by the state (*Angus Petroleum*

23   *Corporation v. Bridgett Luther, as Director of the Division of Oil, Gas, and Geothermal*

24   *Resources*, OCSC No. 00310530, 4th Dist. No. G043303). Angus's team lost in the superior

25   court writ proceeding and recently lost its appeal before the 4th District California Court of

26   Appeals, which came out on or about June 28, 2011. As such, Angus is currently under the

27   threat of being forced to halt operations of the water injection pumps within the next 30-60 days,

28   which will greatly diminish the amount of water pumped at the Springfield Unit.

**COMPLAINT**

*E&B Offer to Purchase Angus's Assets*

39.    In June 2010, E&B offered $37 million offer for Angus's South Coast's assets. Plaintiffs understand that E&B has recently made another offer to Trustee Joseph to purchase Angus's remaining 50% interest in the Springfield Unit at a significant discount.  Plaintiffs have been denied access to any information regarding these negotiations even after Plaintiffs demanded such information.

40.    Further, Plaintiffs understand and believe and thereupon allege that E&B has shut out its own partner, Blackstone in these negotiations. The Bankruptcy Court has confirmed in recent rulings that Blackstone is a partner of E&B and entitled to purchase 20% of any E&B acquisition.

41.    E&B has made this offer knowing that the value of the facility is currently seriously and temporarily devalued because of the Angus team's mismanagement of the facility. E&B has been half owner of the Springfield Unit the entire time it has been mismanaged and wasted. E&B knew about the mismanagement including the threat to Angus's permit to continue operating by the water injection method and the oil spill that Angus's team has never taken responsibility for or even acknowledged came from the Springfield Unit and instead baselessly alleged "sabotage".  E&B has done nothing to prevent, slow, or mitigate the mismanagement and waste of the Angus asset.  To the contrary, E&B is perversely incentivized to allow the Springfield Unit to fall in value as far and as quickly as possible for a simple reason, it intends to buy the remaining 50% of the property.  This is why E&B has ratified the mismanagement and waste currently suppressing the value of Angus's property.

42.    E&B seeks to profit from the waste and mismanagement it allowed in order to buy the Springfield Unit at a fire sale value and then capture the true value later.  E&B states its own strategy as "Aggressive optimization and development of existing and acquired assets. Opportunistic acquisition of properties and leases with significant growth potential." (http:www.ebresources.com, "Our Vision" last visited July 19, 2011.)  Beyond just being "opportunistic" or "aggressive" here, E&B has engaged in what one of their own former employees have described as "ruthless" and "unethical" business practices.  E&B has allowed

1    Angus's asset, which E&B co-owns, to go to waste. E&B has ratified the mismanagement and

2    waste of Angus's assets. It has sat idly by as the Springfield Unit has been investigated for an oil

3    spill, is threatened to lose its license to operate, and has lost extensive value. In fact, E&B

4    valued South Coast for many millions less than the $357 million valuation by E&B only one year

5    ago when oil prices were $70 per barrel and $98 per barrel now. In June 2010, E&B offer $37

6    million for South Coast which included the Angus estate. As such, Plaintiffs have been forced to

7    bring this action to stop E&B from benefiting from its unlawful, unfair, and fraudulent business

8    practices.

9    **FIRST CAUSE OF ACTION**

10    **(Waste of Corporate Assets)**

11    43.    Plaintiffs re-allege and incorporate paragraphs 1 through 42, inclusive, as though

12    fully set forth herein.

13    44.    By engaging in the wrongdoing alleged herein, defendants wasted corporate

14    assets by, among other things, mismanaging corporate assets and operating corporate assets in a

15    reckless, negligent, and dangerous manner that has exposed the Company to civil and criminal

16    liability, for which they are liable. Further, Defendants' wrongdoing alleged herein has resulted

17    in the loss of permits that has jeopardize continued operation.

18    45.    As direct and proximate result of Defendants' wrongful conduct, the Company

19    has suffered damages in an amount to be proven at trial.

20

21    **SECOND CAUSE OF ACTION**

22    **(Injunctive Relief)**

23    46.    Plaintiffs re-allege and incorporate paragraphs 1 through 42, inclusive, as though

24    fully set forth herein.

25    47.    Defendants' conduct, including its ratification of the mismanagement and waste

26    of Angus's assets, which E&B co-owned, in order to suppress the value of the property and then

27    purchase it constitutes unlawful, unfair or fraudulent business practices in violation of the Unfair

28    Competition Law ("UCL"), Business and Professions Code, Sections 17200, *et seq.*

48.    Pursuant to sections 17203 and 17535 of the California Business and Professions Code, Plaintiffs seek an order enjoining Defendants from continuing to violate the UCL. Specifically Plaintiffs seek and order enjoining the sale of Angus's assets until 90 days after Plaintiffs have had the opportunity to do their due diligence, including a Rule 2004 exam, to vet the proposed sale to E&B which Plaintiffs believe is at a substantial discount to the actual value of the Angus Asset.

49.    Plaintiffs require temporary, preliminary, and permanent injunctive relief in order to prevent the permanent and irreversible loss to their and South Coast's interests caused by the removal and sale of the Angus asset to E&B without Plaintiffs or creditors or any other shareholders or interested party ever having the opportunity to perform any due diligence, including a Rule 2004 exam, and vet the sale of the Angus asset to E&B and the opportunity to submit a competing bid for the asset and/or the entire estate, which again would only require the time to perform the necessary due diligence in order to make such a competing bid.

50.    Plaintiffs have suffered ascertainable loss as a result of Defendants' unfair business practices, including the expense of disputing E&B's purchase.

## **PRAYER FOR RELIEF**

**WHEREFOR,** Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.    An order enjoining any sale of Angus's assets until Plaintiffs have had the opportunity to conduct due diligence to ascertain the true value of the asset;

2.    For all legal and equitable remedies under the California Unfair Business Practices Act;

3.    For any and all other legal and equitable remedies that may be available, including damages, statutory penalties, attorneys' fees, costs, and prejudgment and post-judgment interest; and

4.    For reasonable attorney's fees pursuant to the attorney's fees provision of the Agreement.

**COMPLAINT**

1 │ DATED: August 12, 2011

2

3

4

Henry Ruggeri

5

6

7

8

Camm Sublette

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12
**COMPLAINT**

FORM B104  (08/07)                                                                    2007 USBC, Central District of California

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Page 2) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>HENRY RUGGERI, an individual; and CAMM SUBLETTE, an individual, in the Right of and for the Benefit of SOUTH COAST OI | DEFENDANTS<br>E&B NATURAL RESOURCE RESOURCES MANAGEMENT CORPORATION, et al. |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>In Pro Per | ATTORNEYS (If Known)<br><br>RECEIVED<br>AUG 1 2 2011<br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>Deputy Clerk |
| PARTY (Check One Box Only)<br>☐ Debtor     ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor     ☑ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor     ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor     ☑ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Waste: Injunctive Relief

---

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☒ 71-Injunctive relief – imposition of stay
☒ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ |

Other Relief Sought

FORM B104 (08/07), page 2                                                    2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR | | BANKRUPTCY CASE NO. |
| South Coast Oil Corporation | | 8:07-bk-12994-T A |
| DISTRICT IN WHICH CASE IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| Central District California | Santa Ana | Albert |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| | | |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| | | |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) | |
| 8/12/11 | In Pro Per | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendents.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.